Susan D. Fahringer, CA Bar No. 162978
*SFahringer@perkinscoie.com*
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Sunita Bali, CA Bar No. 274108
*SBali@perkinscoie.com*
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Attorneys for Google LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRANDON MOLANDER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>      v.<br><br>GOOGLE LLC, a Delaware limited liability company,<br><br>                    Defendant. | Case No. 5:20-cv-00918-EJD<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS, TRANSFER OR, ALTERNATIVELY, STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: July 30, 2020<br>Hearing Time: 9:00 a.m.<br>Location: Courtroom 4 - 5th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 30, 2020 at 9:00 a.m. or as soon thereafter as this Motion may be heard in the above-entitled court, located at 280 South First Street, San Jose, California, in Courtroom 4 - 5th Floor, defendant Google LLC ("Google"), by and through its counsel of record, will and hereby do, move the Court for an order (1) dismissing, transferring, or staying this case under the first-to-file rule, (2) transferring this case to the Northern District of Illinois under 28 U.S.C. § 1404(a), or (3) dismissing Plaintiff's Complaint with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

This Motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities herein, the Declaration of Sunita Bali in support filed concurrently, the pleadings and papers on file in this action and all related cases, any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

DATED: June 18, 2020

**PERKINS COIE LLP**

By: */s/ Susan D. Fahringer*
Susan D. Fahringer

Susan D. Fahringer, CA Bar No. 162978
*SFahringer@perkinscoie.com*
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Telephone: (206) 359-8000
Facsimile: (206) 359-9000

Sunita Bali, CA Bar No. 274108
*SBali@perkinscoie.com*
505 Howard Street, Suite 1000
San Francisco, CA 94105
Telephone: (415) 344-7000
Facsimile: (415) 344-7050

Attorneys for Google LLC

1

**TABLE OF CONTENTS**

2

                                                                                        **Page**

3

I.     INTRODUCTION .......................................................................................... 1

4

II.    BACKGROUND ............................................................................................ 1

5

       A.     The *Rivera* Federal Action ................................................................... 1

6

       B.     The Illinois State Court Actions............................................................ 3

7

       C.     The Instant Case .................................................................................... 4

8

III.   MOTION TO DISMISS, TRANSFER, OR STAY ....................................... 5

9

       A.     Legal Standard ...................................................................................... 5

10

       B.     The First-to-File Rule Applies Here ..................................................... 5

11

       C.     This Case Should Be Dismissed Under the First-to-File Rule.............. 8

12

       D.     Alternatively, this Case Should Be Transferred to the Northern District of
              Illinois ................................................................................................. 11

13

              1.     Transfer is appropriate pursuant to the first-to-file rule........... 11

14

              2.     Transfer is permitted pursuant to 28 U.S.C. § 1404(a). ........... 12

15

       E.     At the Very Least, this Case Should Be Stayed .................................. 15

16

IV.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ................ 16

17

       A.     Legal Standard .................................................................................... 16

18

       B.     BIPA Does Not Apply to Google Photos............................................ 16

19

V.     CONCLUSION............................................................................................ 21

20

21

22

23

24

25

26

27

28

COMBINED MOTION TO DISMISS, TRANSFER, OR STAY - NO. 5:20-CV-00918-EJD

CASES

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
    946 F.2d 622 (9th Cir. 1991)...................................................................................13

*Cadenasso v. Metro. Life Ins. Co.*,
    No. 13-CV-05491-JST, 2014 WL 1510853 (N.D. Cal. Apr. 15, 2014)....................13

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988)..............................................................................16, 21

*Bryant v. Compass Grp. USA, Inc.*,
    958 F.3d 617 (7th Cir. 2020).....................................................................................9

*Carrera v. First Am. Home Buyers Prot. Co.*,
    No. CV 11-10242-GHK, 2012 WL 13012698 (C.D. Cal. Jan. 24, 2012)................7

*Chisom v. Roemer*,
    501 U.S. 380 (1991)................................................................................................18

*Church of Scientology of Cal. v. U.S. Dep't of Army*,
    611 F.2d 738 (9th Cir. 1979)...............................................................................5, 10

*Cont'l Grain Co. v. The Barge FBL-585*,
    364 U.S. 19 (1960)..................................................................................................15

*Cortes v. Victoria Secret Stores, LLC*,
    No. 5:19-CV-07639-EJD, 2020 WL 1139657 (N.D. Cal. Mar. 9, 2020) ..................8

*Eli Lilly & Co. v. Genentech, Inc.*,
    No. 13-cv-0919-YGR, 2013 WL 4396718 (N.D. Cal. Aug. 13, 2013)....................11

*Ford v. [24]7.ai, Inc.*,
    No. 18-CV-02770-BLF, 2019 WL 570756 (N.D. Cal. Feb. 12, 2019).............7, 8, 9

*Forrand v. Fed. Express Corp.*,
    No. C07–4674 TEH, 2008 WL 276389 (N.D. Cal. Jan.31, 2008)...........................13

*Garcia v. 3M Co.*,
    No. C-09-1943-RMW, 2009 WL 3837243 (N.D. Cal. Nov. 16, 2009) ...................14

*Halo Elecs., Inc. v. Bel Fuse Inc.*,
    No. C-07-06222 RMW, 2008 WL 1991094 (N.D. Cal. May 5, 2008) ..................5, 8

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001)................................................................................19

*Hill v. Robert's Am. Gourmet Food, LLC*,
    No. 13-CV-00696-YGR, 2013 WL 3476801 (N.D. Cal. July 10, 2013)...................7

*In re Bozic,*
    888 F.3d 1048 (9th Cir. 2018)................................................................................................11

*In re Facebook Biometric Info. Privacy Litig.,*
    185 F. Supp. 3d 1155 (N.D. Cal. 2016) ..........................................................................19, 20

*Innovative Modular Sols. v. Hazel Crest Sch. Dist. 152.5,*
    965 N.E.2d 414 (Ill. 2012) ..................................................................................................18

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.,*
    544 F. Supp. 2d 949 (N.D. Cal. 2008) ...............................................................................6, 9

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.,*
    787 F.3d 1237 (9th Cir. 2015)........................................................................................6, 8, 15

*Kraft, Inc. v. Edgar,*
    561 N.E.2d 656 (Ill. 1990) ..................................................................................................20

*Laborer's Int'l Union of N. Am., Local 1280 v. State Labor Relations Bd.,*
    507 N.E.2d 1200 (Ill. App. Ct. 1987) ..................................................................................19

*Monroy v. Shutterfly, Inc.,*
    No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)................................................19

*Norberg v. Shutterfly, Inc.,*
    152 F. Supp. 3d 1103 (N.D. Ill. 2015) ..................................................................................19

*North v. Samsung SDI Am., Inc.,*
    No. 19-CV-05621-EJD, 2020 WL 1984020 (N.D. Cal. Apr. 27, 2020) ............................12, 13

*Pacesetter Sys., Inc. v. Medtronic, Inc.,*
    678 F.2d 93 (9th Cir. 1982)........................................................................................5, 8, 10

*Papasan v. Dometic Corp.,*
    No. 16-CV-02117-HSG, 2018 WL 1367341 (N.D. Cal. Mar. 16, 2018) ................................15

*Pedro v. Millennium Prods., Inc.,*
    No. 15-CV-05253-MMC, 2016 WL 3029681 (N.D. Cal. May 27, 2016)................................7

*People v. Diggins,*
    919 N.E.2d 327 (Ill. 2009) ..................................................................................................17

*Prime Healthcare Servs., Inc. v. SEIU,*
    No. 14-cv-3831 YGR, 2014 WL 5422631 (N.D. Cal. Oct. 24, 2014)................................6, 11

*Schwartz v. Frito-Lay N. Am.,*
    No. C-12-02740 (EDL), 2012 WL 8147135 (N.D. Cal. Sept. 12, 2012)................................13

*Tung Tai Grp. v. Fla. Transformer, Inc.,*
    No. 5:11-CV-02389 EJD (HRL), 2011 WL 3471400 (N.D. Cal. Aug. 8, 2011)....................12

-iii-

*United Artists Theatre Circuit, Inc. v. F.C.C.*,
   147 F. Supp. 2d 965 (D. Ariz. 2000)...................................................................10, 15

*Univ. of Pittsburgh of Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*,
   No. C-08-2973 MMC, 2008 WL 4279704 (N.D. Cal. Sept. 16, 2008) .....................................6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ...................................................................................12

*Veeva Sys., Inc. v. IQVIA Inc.*,
   No C-19-04137-WHA, 2019 WL 4695571 (N.D. Cal. Sept. 26, 2019) ....................................11

*Vimo, Inc. v. Norvax Corp.*,
   No. C-07-01897-RMW, 2007 WL 9812883 (N.D. Cal. June 22, 2007)...................................8

*W. Pac. Signal, LLC v. Trafficware Grp., Inc.*,
   No. 18-CV-02307-LB, 2018 WL 3109809 (N.D. Cal. June 25, 2018).....................................8

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
   967 F. Supp. 2d 1289 (N.D. Cal. 2013) ...............................................................7, 8

*Weiss v. Google Inc.*,
   No. 1:16-cv-02870 .......................................................................................1

**STATUTES**

740 ILCS 14/5 .............................................................................................16, 18

740 ILCS 14/10 ...........................................................................................16, 17

740 ILCS 14/15 ....................................................................................4, 8, 17, 18

28 U.S.C. § 1404 ...............................................................................11, 12, 15, 21

Illinois Biometric Information Privacy Act ("BIPA")......................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6).................................................................................16, 21

N.D. Ill. LR 40.4 ...........................................................................................14

Oxford English Dictionary...................................................................................19

U.S. Courts, 2019 Nat'l Judicial Caseload,
   www.uscourts.gov/statistics/table/na/federal-court-management-
   statistics/2019/12/31-1 .................................................................................14

-iv-

## I.     INTRODUCTION

This case is the fifth attempt by the attorneys representing Plaintiff Brandon Molander to relitigate the same claims, on behalf of the same putative class, against the same defendant, hoping for a different result in a forum they view as more favorable. Molander is represented by Ahdoot & Wolfson, PC and Carey Rodriguez Milian Gonya LLP ("AWCR"). More than four years ago, AWCR began filing a series of suits alleging that Google violated the Illinois Biometric Information Privacy Act ("BIPA") in connection with the free Google Photos service. AWCR filed four such cases before this one, all of which are pending in various Illinois state and federal courts. The first case (filed in 2016) is pending in the Seventh Circuit, and the others are stayed in light of the first case.

Apparently not satisfied with the results in those cases, and on the heels of the announcement of a significant settlement in a BIPA case against Facebook in this district, AWCR filed yet another identical case in this Court.[1] The law does not permit such blatant forum-shopping and duplicative litigation. To avoid conflicting rulings, and to conserve judicial resources, Google now moves to dismiss this case or transfer it to the U.S. District Court for the Northern District of Illinois, where the first-filed case has been litigated for years. Alternatively, Google moves to stay this case until the first-filed case is resolved. Google also moves to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) because BIPA does not apply to Google Photos and Molander therefore cannot state valid claims under BIPA.

## II.     BACKGROUND

### A.     The *Rivera* Federal Action

In March 2016, AWCR filed two cases in the Northern District of Illinois: *Rivera v. Google LLC*, No. 1:16-cv-02714 and *Weiss v. Google Inc.*, No. 1:16-cv-02870. Those cases, which were later consolidated and became the *Rivera* Federal Action, alleged that Google

---

[1] For ease of reference, a table summarizing the key similarities in the first-filed case and subsequent cases is attached as Exhibit A to the Declaration of Sunita Bali in Support of Google's Motion to Dismiss, Transfer, or Alternatively, Stay Proceedings ("Bali Decl.").

Photos—a free service that allows users to store and organize their digital photos—collected and stored plaintiffs' biometric data in violation of BIPA. *See* Dkt. 63 at ¶¶ 52-71.[2] Like Molander, the named plaintiffs in those cases sought to represent a class of all persons "who had their biometric identifiers, including scans of face geometry, collected, captured, received, or otherwise obtained by Google from photographs uploaded within the state of Illinois." *Id.* at ¶¶ 46-47; *see also* Bali Decl., Ex A. They also sought statutory damages, injunctive and other equitable relief, a declaratory judgment, and attorneys' fees and costs. *See* Dkt. 63 at ¶ 71.

Years of hard-fought litigation ensued. Google first moved to dismiss the *Rivera* Federal Action on statutory and constitutional grounds. *See* Dkts. 48, 49. In a 30-page opinion, the district court (Hon. Edmond E. Chang) denied Google's motion to dismiss. *See* Dkt. 60. The parties then embarked on 11 months of intensive fact discovery closely supervised by Judge Chang, which included more than 150 written discovery requests, the exchange of more than 300,000 pages of documents, and the depositions of multiple individuals and corporate representatives on highly technical topics related to the operation of Google Photos and the feasibility of limiting features by geographic region to comply with BIPA. *See* Bali Decl. ¶ 3. Judge Chang was deeply involved in discovery issues, going so far as to rule on the specific search terms to be used by the parties in connection with electronic discovery, *see* Dkt. 117, and approving a staged approach to discovery and briefing, *see* Dkts. 99, 119, 134, 141, 145. Judge Chang also held more than 10 status conferences during the course of the case, during which he addressed a wide range of substantive issues. *See* Dkts. 36, 62, 77, 94, 99, 116, 119, 134, 141, 200. More than two years after the *Rivera* Federal Action was filed, fact discovery closed with respect to plaintiffs' claims and Google's defenses. *See* Dkt. 119.

On December 27, 2018, almost three years after the *Rivera* Federal Action was filed, Judge Chang granted Google's motion for summary judgment on the ground that plaintiffs could not show they suffered an injury-in-fact sufficient to confer Article III standing. *See* Dkt. 207.

---

[2] Unless otherwise indicated, citations to "Dkt." refer to documents filed in the district court in the *Rivera* Federal Action, No. 1:16-cv-02714 (N.D. Ill. 2016).

1   Plaintiffs subsequently appealed Judge Chang's Article III ruling to the Seventh Circuit Court of

2   Appeals. Google cross-appealed, arguing that the case should be dismissed because plaintiffs

3   failed to state a claim upon which relief could be granted. *See* Dkts. 213, 220. Both appeals

4   remain pending. *See Rivera v. Google LLC*, No. 19-1182 (7th Cir.).

5           The appeals pending at the Seventh Circuit potentially raise at least four dispositive

6   issues: (1) whether plaintiffs lack Article III standing; (2) whether BIPA regulates photos or

7   information derived from photos; (3) whether plaintiffs adequately alleged that a violation of

8   BIPA occurred in Illinois, which is essential because BIPA does not have extraterritorial reach;

9   and (4) whether BIPA, as construed by plaintiffs, violates the Dormant Commerce Clause. *See*

10  Dkts. 60, 207, 213, 220; *see also Rivera v. Google LLC*, No. 19-1242 (7th Cir. Feb. 25, 2019),

11  ECF No. 15. Those are exactly the same arguments that this Court would consider if this case

12  proceeds.

13  **B.       The Illinois State Court Actions**

14          On May 24, 2019—just a few months after appealing Judge Chang's decision to the

15  Seventh Circuit—AWCR filed *Rivera v. Google LLC*, No. 2019-CH-00990 (Ill. Cir. Court, Cook

16  Cnty.) (the "*Rivera* State Action") in Illinois state court. The named plaintiff in the *Rivera* State

17  Action (Lindabeth Rivera) is the same as the *Rivera* Federal Action, and the claims alleged are

18  indistinguishable. *See* Bali Decl., Ex. A. As a result, the outcome of the appeal in the *Rivera*

19  Federal Action could obviate some or all of the *Rivera* State Action. Recognizing that possibility,

20  and over AWCR's objection, the Illinois court stayed the *Rivera* State Action.

21          Stymied in their effort to simultaneously pursue the same claims on behalf of the same

22  plaintiff in the *Rivera* Federal and State Actions, AWCR filed yet *another* case in Illinois state

23  court on September 26, 2019. *See Azzano v. Google, LLC*, No. 2019-CH-11153 (Ill. Cir. Court,

24  Cook Cnty.) ("*Azzano*"). Once again, that case raises the same claims, based on the same subject

25  matter, against the same defendant. The only notable difference is that *Azzano* features different

26  named plaintiffs. But even that difference is immaterial because the *Azzano* plaintiffs are

27  members of the putative class alleged in the *Rivera* Federal and State Actions. *See* Bali Decl., Ex.

28  A. *Azzano* was deemed "related" and transferred to the judge presiding over the *Rivera* State

1    Action, who promptly—again over AWCR's objection—stayed the case. Both the *Rivera* State

2    Action and *Azzano* remain stayed.

3    **C.      The Instant Case**

4          Not long after their Illinois state court cases were stayed, and close on the heels of the

5    announcement of a large settlement in a BIPA case against Facebook in this district, AWCR filed

6    this case.[3] Like the *Rivera* Federal Action, the *Rivera* State Action, and *Azzano*, this case asserts

7    the same claims, based on the same facts, against the same defendant, on behalf of the same

8    putative class. *See* Bali Decl., Exs. A, B.[4]

9          More specifically, Plaintiff Molander alleges that Google violated BIPA in two ways:

10   First, Molander claims that Google violated Section 14/15(b) of the statute by collecting

11   biometric identifiers and biometric information from photos uploaded by him and by others

12   without first providing notice and obtaining consent. *See* Compl. ¶¶ 29-35; *see also* 740 ILCS

13   14/15(b) (imposing notice-and-consent requirements for private entities that "collect, capture,

14   purchase, receive through trade, or otherwise obtain" BIPA-covered information). Second,

15   Molander claims that Google violated Section 14/15(a) of the statute by possessing biometric

16   identifiers and biometric information and by failing to publish a written policy for destroying

17   such information. *See* Compl. ¶ 53; *see also* 740 ILCS 14/15(a) (requiring private entities "in

18   possession" of covered information to "develop a written policy, made available to the public,

19   establishing a retention schedule and guidelines for permanently destroying" such information).

20   _____

21          [3] After this case was filed, two more copycat actions were filed against Google by

22   different plaintiffs represented by different counsel: *Calderon v. Google LLC*, No. 5:20-cv-

23   01264-EJD (N.D. Cal. 2020) and *Marquez v. Google, LLC*, No. 2020-CH-00500 (Ill. Cir. Court,

24   Will Cnty.). The plaintiffs in *Calderon* and *Marquez* are represented by Frank Hedin, who

25   previously served as counsel for the plaintiffs in the *Rivera* Federal Action. *Calderon* was

26   voluntarily dismissed on June 10, 2020. *See Calderon*, No. 5:20-cv-01264-EJD, Dkt. 23.

27          [4] Exhibit B is a "redline" document comparing the consolidated complaint in the *Rivera*

28   Federal Action and the complaint in this case.

-4-

Based on those allegations, Molander seeks to represent a class of persons who had their "biometric identifiers" "obtained by Google from photographs uploaded within the state of Illinois." Compl. ¶ 36.

Because this case is virtually indistinguishable from AWCR's earlier cases, counsel for Google asked AWCR to stipulate to transfer this case to the Northern District of Illinois. *See* Bali Decl. ¶ 4. AWCR declined. *Id.*  This motion followed.

### III.   MOTION TO DISMISS, TRANSFER, OR STAY UNDER THE FIRST-TO-FILE RULE

As the facts above show, this case is a maneuver by AWCR to try to obtain better results from this Court than they have been able to achieve for the last four years in Illinois. Forum shopping of this nature drains judicial and party resources and undermines fundamental principles of comity. It should be rejected under the first-to-file rule.

### A.    Legal Standard

The first-to-file rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982). The rule is meant "to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments," and it "should not be disregarded lightly." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979), overruled on other grounds by *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). The rule reflects the common-sense proposition that "when two identical actions are filed in courts of concurrent jurisdiction, the court which first acquired jurisdiction should try the lawsuit." *Pacesetter Sys.*, 678 F.2d at 95; *Halo Elecs., Inc. v. Bel Fuse Inc.*, No. C-07-06222 RMW, 2008 WL 1991094, at *2 (N.D. Cal. May 5, 2008). Here, that court is the Northern District of Illinois.

### B.    The First-to-File Rule Applies Here

Courts consider three factors in determining whether the first-to-file rule applies: (1) the chronology of the actions; (2) the similarity of the parties; and (3) the similarity of the issues. *See*

1    *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). All

2    three factors weigh decisively in favor of applying the first-to-file rule here.

3          As an initial matter, the chronology could not be more clear: the *Rivera* Federal Action

4    was filed almost four years before this case and was extensively litigated, with Judge Chang

5    closely managing complex discovery and establishing a staged approach to consideration of

6    Google's motions for summary judgment. The first of those motions resulted in dismissal; if that

7    decision is reversed, then Judge Chang granted Google leave to raise additional merits defenses,

8    including some he considered "substantial," in a second motion for summary judgment. *See*

9    Section II.A, *supra*. As shown by the docket in the *Rivera* Federal Action, Judge Chang has

10   already invested significant time developing an efficient plan for managing this litigation, taking

11   into account the nature of Google's defenses and the burdens of related discovery. The well-

12   developed case file in the *Rivera* Federal Action and the substantial time and effort invested in

13   that litigation support application of the first-to-file rule here. *See Intersearch Worldwide, Ltd. v.*

14   *Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 963 (N.D. Cal. 2008) (explaining that the first-to-file

15   rule should be applied if the earlier filed case has "a more developed case file").

16         The fact that the *Rivera* Federal Action is on appeal does not change the analysis. Where,

17   as here, the appeal in the first-filed case may resolve the very questions raised in the later-filed

18   case (for instance, whether BIPA applies to photos and information derived from photos), the

19   rationale for application of the first-to-file rule is in full force. *See, e.g.*, *Univ. of Pittsburgh of*

20   *Commonwealth Sys. of Higher Educ. v. Varian Med. Sys., Inc.*, No. C-08-2973 MMC, 2008 WL

21   4279704, at *3 (N.D. Cal. Sept. 16, 2008) (applying first-to-file rule and explaining that "[i]f

22   [plaintiff] prevails on its appeal and the dismissal is reversed, substantially identical claims will

23   be pending simultaneously in [two districts], with all the attendant risks of duplicative

24   proceedings and conflicting rulings," and "given the [first-filed court's] investment of time and

25   effort in the subject litigation, there is little question that litigating this matter here would

26   squander judicial resources") (citation and internal quotation marks omitted); *see also Prime*

27   *Healthcare Servs., Inc. v. SEIU*, No. 14-cv-3831 YGR, 2014 WL 5422631, at *4 (N.D. Cal. Oct.

28   24, 2014) (rejecting argument that first-to-file rule is inapposite when earlier-filed case is on

appeal); *Carrera v. First Am. Home Buyers Prot. Co.*, No. CV 11-10242-GHK (FFMx), 2012 WL 13012698, at *3 (C.D. Cal. Jan. 24, 2012) (explaining that first-to-file rule "is applicable even when the first-filed case is pending on appeal" because "the same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit") (citations omitted).

The second factor, the similarity of the parties, weighs just as heavily in favor of applying the first-to-file rule. The defendant in both cases is the same: Google. Moreover, because the putative classes are the same, the plaintiffs are the same as well. In the Ninth Circuit, district courts applying the first-to-file rule in the context of a class action generally "compare[] the putative classes rather than the named plaintiffs." *Pedro v. Millennium Prods., Inc.*, No. 15-CV-05253-MMC, 2016 WL 3029681, at *3 (N.D. Cal. May 27, 2016); *see also Ford v. [24]7.ai, Inc.*, No. 18-CV-02770-BLF, 2019 WL 570756, at *3 (N.D. Cal. Feb. 12, 2019) ("Courts in this district generally evaluate this factor by comparing the proposed putative classes rather than the individual class representative"); *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-CV-00696-YGR, 2013 WL 3476801, at *3 (N.D. Cal. July 10, 2013) (explaining that "the more widely accepted rule" involves "comparing the putative classes even prior to certification").

Here, the putative classes are identical: people "who had their biometric identifiers, including scans of face geometry, collected, captured, received, or otherwise obtained by Google from photographs uploaded within the state of Illinois." Compl. ¶ 36; *compare with* Dkt. 63 at ¶¶ 46-47 (each putative class described with identical language); *see also* Bali Decl., Ex. A.[5] But even if there were minor differences between the putative classes (there are not), "the first-to-file rule does not require strict identity of the parties, but rather substantial similarity." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013) (citations omitted) (emphasis in original). And putative classes qualify as "substantially similar" where "both classes

_____

[5] The *Rivera* Federal Action is brought on behalf of the same class, although it is broken into two subclasses—one consisting of all "users," the other of all "non-users"—of Google Photos. Dkt. 63 at ¶¶ 46-47.

-7-

1    seek to represent at least some of the same individuals." *Id.* at 1296; *see also Cortes v. Victoria*

2    *Secret Stores, LLC*, No. 5:19-CV-07639-EJD, 2020 WL 1139657, at *3 (N.D. Cal. Mar. 9, 2020)

3    (finding parties substantially similar under first-to-file rule where "the proposed class in the

4    [later-filed action] is entirely subsumed in the proposed class in the [first-filed action]").

5          The third factor, similarity of the issues, also weighs heavily in favor of applying the first-

6    to-file rule. This case and the *Rivera* Federal Action raise issues that are not just similar, but

7    identical. In both cases, members of the same putative class bring the same claims (for violation

8    of the same subsections of BIPA, 740 ILCS 14/15(a) and 14/15(b)), against the same defendant,

9    based on the same facts, and seek the same relief. *See* Bali Decl., Ex. A. This exceeds what the

10   test requires. *See, e.g.*, *Kohn*, 787 F.3d at 1240-41 (for first-to-file rule to apply, actions "need not

11   be identical, only substantially similar").

12         In sum, all three factors weigh heavily in favor of applying the first-to-file rule.

13   **C.      This Case Should Be Dismissed Under the First-to-File Rule**

14         Where the first-to-file rule applies, a court may dismiss, transfer, or stay the later-filed

15   action. *See Halo Elecs.*, 2008 WL 1991094, at *2 (citation omitted). Dismissal is the right result

16   here. *See Cortes*, 2020 WL 1139657, at *4 (explaining that "[i]n most cases, dismissal of a

17   second-filed action is appropriate under the first-to-file rule"). Dismissal is appropriate because it

18   will both conserve judicial resources and reduce the likelihood of inconsistent rulings. *See*

19   *Pacesetter*, 678 F.2d at 96 (affirming dismissal of second-filed case involving identical parties

20   and issues, and explaining that "the goal of judicial efficiency would not have been served by

21   accepting jurisdiction"); *Ford*, 2019 WL 570756, at *2, 4-5 (dismissing second-filed putative

22   class action and explaining that "[w]hen applying the first-to-file rule, courts should be driven to

23   maximize economy, consistency, and comity") (citation omitted); *W. Pac. Signal, LLC v.*

24   *Trafficware Grp., Inc.*, No. 18-CV-02307-LB, 2018 WL 3109809, at *6 (N.D. Cal. June 25,

25   2018) (dismissing second-filed action and explaining that there would be "no benefit to

26   transferring [the second-filed] action . . . as it would be wholly duplicative," and "no benefit to

27   staying [the second-filed] [a]ction until [the first-filed] action is completed, because the [first-

28   filed] [a]ction will fully adjudicate all issues raised in this action"); *Vimo, Inc. v. Norvax Corp.*,

No. C-07-01897-RMW, 2007 WL 9812883, at *2 (N.D. Cal. June 22, 2007) (explaining that "dismissal, rather than transfer, is appropriate because substantially the same issues in the present action are already pending . . . in the [first-filed action] and transfer would be superfluous").

In determining whether to dismiss rather than transfer or stay, courts consider the availability of relief and jurisdiction in the first-filed action and the relative pace of the two cases. *See Intersearch*, 544 F. Supp. 2d at 963. If the first-filed action is proceeding in a jurisdiction that can capably "address all of plaintiff's claims and provide all parties with full and efficient relief," and if the first-filed action is "more developed" procedurally, then dismissal is appropriate. *Id.* Those principles clearly favor dismissal of this case.

**First,** the Northern District of Illinois and the Seventh Circuit can provide the same relief as this Court. *See id.* (dismissing later filed action where there was no concern "regarding the availability of remedies in the court of first filing, or regarding its jurisdiction over claims which might implicate a statute of limitations if dismissed by that court").[6]

**Second,** all members of the putative class in this case (including Molander himself, *see* Section II.C, *supra*) are also members of the putative classes in the *Rivera* Federal Action. The alleged injuries of the class in this case can therefore be fully redressed in the *Rivera* Federal Action. *See Ford*, 2019 WL 570756, at *4-5 (dismissing putative class action pursuant to first-to-file rule).

_____

[6] The *Rivera* Federal Action is currently on appeal before the Seventh Circuit. Plaintiffs appealed the district court's dismissal for lack of Article III standing, and Google cross-appealed the decision on its motion to dismiss. During the time the *Rivera* Federal Action appeal has been pending, the Seventh Circuit held in a separate case that at least some plaintiffs have standing to sue in federal court for violations of BIPA. *See Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020). Accordingly, the standing issue remains a live one, currently in the Seventh Circuit's hands. Moreover, even if the Seventh Circuit concludes that the plaintiffs in the *Rivera* Federal Action lack Article III standing, that would not prevent plaintiffs from seeking relief in Illinois state court—including in any of AWCR's previously filed state court actions.

**Third,** as set forth in Section II.A, *supra*, the *Rivera* Federal Action has been actively and extensively litigated for more than four years and Judge Chang and the parties have already devoted considerable time, resources, and energy to that complex endeavor. The outcome of that appeal could resolve many, if not all, of the issues that Molander would raise here. There is no need or justification for this Court to devote its resources to undertaking the same exercise as Judge Chang and the Seventh Circuit.

**Fourth,** allowing this case to proceed in parallel with the *Rivera* Federal Action would create a substantial risk of conflicting rulings. AWCR have filed *four* previous cases raising the same claims, based on the same facts, by the same putative class, against the same defendant. Regardless of the outcome of the *Rivera* Federal Action, any one of those cases could result in decisions that conflict with decisions of this Court. For example, if Judge Chang's dismissal for lack of Article III standing is reversed, then the Seventh Circuit will consider Google's cross-appeal, which raises the same defenses that Google would raise in the instant case. If the *Rivera* Federal Action is remanded to Judge Chang, he is poised to consider those same defenses on summary judgment. Class certification must be decided in whichever of the earlier-filed cases proceeds, whether in Illinois state or federal court. Indeed, it is for these very reasons—avoiding duplicative litigation and all of the ills that go with it—that the judge presiding over both the *Rivera* State Action and *Azzano* stayed those cases. *See United Artists Theatre Circuit, Inc. v. F.C.C.*, 147 F. Supp. 2d 965, 979 n.12 (D. Ariz. 2000) (noting that the first-to-file rule "is no less applicable when the courts set in competition against each other are a federal district court and a state court").

The bottom line is that permitting AWCR to use this Court to relitigate the same claims they are currently litigating in Illinois would squander judicial resources and risk inconsistent rulings. Dismissal is the appropriate outcome. *See Pacesetter*, 678 F.2d at 95-96 (affirming dismissal under first-to-file rule and explaining that "permitting multiple litigation of these identical claims could serve no purpose of judicial administration," and would raise a "clear" "risk of conflicting determinations"); *see also Church of Scientology*, 611 F.2d at 750 (explaining

-10-

that the purpose of the first-to-file rule is to "avoid the embarrassment of conflicting judgments")
(citation omitted).

**D.      Alternatively, this Case Should Be Transferred to the Northern District of Illinois**

If the Court does not dismiss this case based on the first-to-file rule, then it should transfer
it to the Northern District of Illinois (where the *Rivera* Federal Action was litigated). Both the
first-to-file rule and 28 U.S.C. § 1404(a) justify transfer here.

**1.      Transfer is appropriate pursuant to the first-to-file rule.**

For the same reasons that justify dismissal, the first-to-file rule permits a court to transfer
the later-filed case to the district that presided over the first-filed case. *See e.g.*, *In re Bozic*, 888
F.3d 1048, 1051-52 (9th Cir. 2018) (explaining that district court presiding over second-filed case
has discretion to transfer case "in the interest of efficiency and judicial economy"); *Veeva Sys.,
Inc. v. IQVIA Inc.*, No C-19-04137-WHA, 2019 WL 4695571, at *3 (N.D. Cal. Sept. 26, 2019)
(transferring case and explaining that because the first-filed action had been litigated for several
years, the court would "have familiarity with [the] claims and issue consistent rulings"); *see also
Eli Lilly & Co. v. Genentech, Inc.*, No. 13-cv-0919-YGR, 2013 WL 4396718, at *6 (N.D. Cal.
Aug. 13, 2013) ("[I]n highly technical cases such as this one, judicial economy favors transfer to
a court that has a working familiarity with the background technology or science").

As discussed in Section III.B, *supra*, transfer is appropriate even if the first-filed case, like
the *Rivera* Federal Action, is on appeal. Transfer furthers judicial efficiency because it allows
relation and consolidation of the two actions. *See Prime Healthcare*, 2014 WL 5422631, at *4
("[U]pon transfer of [the second-filed case] . . . , counsel for both parties would be required to
notify the court of its relatedness to [the first-filed case], allowing the judge who presided over
the first case to have [the second-filed case] reassigned."). The fact of an appeal does not alter the
analysis, because "if [plaintiff] is successful in its appeal then [the first-filed case] would be
remanded to the same judge to whom the transfer of [the second-filed case] is most likely to be
assigned." *Id.*

1          **2.          Transfer is permitted pursuant to 28 U.S.C. § 1404(a).**

2          Even if the Court opts not to dismiss or transfer this action under the first-to-file rule, it

3   should transfer the case pursuant to 28 U.S.C. § 1404(a). Much like the first-to-file rule, the

4   purpose of Section 1404(a) is "to prevent the waste of time, energy and money and to protect

5   litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen*

6   *v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). To support a motion for

7   transfer under Section 1404(a), three elements must be satisfied: "(1) that venue is proper in the

8   transferor district; (2) that the transferee district is one where the action might have been brought;

9   and (3) that the transfer will serve the convenience of the parties and witnesses and will promote

10  the interests of justice." *Tung Tai Grp. v. Fla. Transformer, Inc.*, No. 5:11-CV-02389 EJD

11  (HRL), 2011 WL 3471400, at *1 (N.D. Cal. Aug. 8, 2011) (citations omitted).

12         As to the first two elements, there is no question that venue is proper in the Northern

13  District of Illinois or that this case "might have been brought" there: Molander is and has been at

14  all relevant times a resident and citizen of Illinois and a substantial part of the events giving rise

15  to his claims occurred in Illinois. *See id.* at *1-2; *see also* Compl. ¶¶ 7, 27-28, 35. It is also clear

16  that this case could have been brought in Illinois because AWCR has essentially done that

17  already, by their filing of the *Rivera* Federal Action, the *Rivera* State Action, and *Azzano*. Further,

18  there is no reason to believe that venue in Illinois would be contested, because Google did not

19  challenge venue in any of the earlier-filed actions there and would not do so here if this case is

20  transferred.

21         As to the third element, the Court must "consider and weigh a series of factors" including:

22  (1) the plaintiff's choice of forum, (2) the convenience of the parties, (3) the convenience of the

23  witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable

24  law, (6) feasibility of consolidation of other claims, (7) any local interest in the controversy, and

25  (8) the relative court congestion and time of trial in each forum. *Tung Tai*, 2011 WL 3471400, at

26  *1; *see also North v. Samsung SDI Am., Inc.*, No. 19-CV-05621-EJD, 2020 WL 1984020, at *7

27  (N.D. Cal. Apr. 27, 2020) (citations omitted).

28

These factors weigh decisively in favor of transfer. As to the first factor, although a plaintiff's choice of forum is typically entitled to some deference, it deserves no weight in this case, where Molander seeks to represent a nationwide class, Molander resides in Illinois and brings Illinois statutory claims, and the events in Molander's Complaint allegedly occurred in Illinois. *See* Compl. ¶¶ 27-28 ("Molander has used his smart phone devices to take and upload numerous photos *in the state of Illinois* to his cloud-based Google Photos account . . . . These photos were all uploaded to the cloud-based Google Photos service while his smart phone was located *in the state of Illinois and assigned an Illinois-based IP address*.") (emphasis added); *Schwartz v. Frito-Lay N. Am.*, No. C-12-02740 (EDL), 2012 WL 8147135, at *4 (N.D. Cal. Sept. 12, 2012) ("[T]he fact that [p]laintiff seeks to represent a nationwide class means that [his] choice of forum receives less deference."); *North*, 2020 WL 1984020, at *8 ("Plaintiff's choice of forum deserves little weight because [he] does not reside in California and this forum lacks any connection to the activities alleged in the Complaint.").

Moreover, the Ninth Circuit has held that courts should disregard a plaintiff's forum choice where it is the result of impermissible forum shopping. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). The Court should infer forum shopping here, where it is clear that Molander chose to file in the Northern District of California "to escape an unfavorable ruling in a different district"—namely, the dismissal of the *Rivera* Federal Action in the Northern District of Illinois based on lack of standing, and the stays issued in the *Rivera* State Action and *Azzano*. *Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-JST, 2014 WL 1510853, at *5 (N.D. Cal. Apr. 15, 2014); *see also Forrand v. Fed. Express Corp.*, No. C07–4674 TEH, 2008 WL 276389, at *3 (N.D. Cal. Jan.31, 2008) (inferring forum shopping where plaintiff resided in a district where "counsel had previously filed a lawsuit asserting claims on behalf of a putative class that included that plaintiff," and then "chose to file a nearly identical class action in [this district] just days after the judge in the earlier-filed [action] issued an unfavorable ruling"). The first factor therefore weighs in favor of transfer.

The second, third, and fourth factors (the convenience of the parties and witnesses and ease of access to evidence) also weigh in favor of transfer given that, in this case, extensive fact

-13-

1  discovery has already been completed in the *Rivera* Federal Action in Illinois. *See* Bali Decl. ¶ 3.

2  Little merits discovery remains, and much of what does remain pertains to Molander, who resides

3  in Illinois. *See* Compl. ¶ 7.

4    The fifth and seventh factors—familiarity of each forum with the applicable law and local

5  interest in the controversy—weigh in favor of transfer as well. While there is no doubt that this

6  Court is capable of adjudicating the claims presented here, those claims arise solely under an

7  Illinois state statute that has no extraterritorial effect and is intended to protect Illinois citizens.

8  *See* Dkt. 60 at 22 ("[BIPA] is not authorized to have extraterritorial effect."); *see also* Ill. House

9  Tr. 2008 Reg. Sess. No. 276 (BIPA enacted to provide "protections for the citizens of Illinois").

10  Because Molander is an Illinois resident, suing under Illinois law, and because he alleges that

11  some events giving rise to his claim occurred in Illinois, *see* Compl. ¶¶ 7, 27-28, 35, Illinois

12  certainly has an interest in the controversy.[7] *See Garcia v. 3M Co.*, No. C-09-1943-RMW, 2009

13  WL 3837243, at *4 (N.D. Cal. Nov. 16, 2009).

14    The sixth factor, the feasibility of consolidation, also favors transfer. Under the Northern

15  District of Illinois Local Rules, civil cases are considered related and may be assigned to the same

16  judge if they "involve some of the same issues of fact or law," "grow out of the same transaction

17  or occurrence," or in class action suits, "one or more of the classes involved in the cases is or are

18  the same." N.D. Ill. LR 40.4. There can be no dispute that this case and the *Rivera* Federal Action

19  are related and that consolidation is both feasible and, should the Seventh Circuit remand the

20  *Rivera* Federal Action to the district court, likely.

21    The eighth factor, court congestion and time to trial, is neutral. While the median time to

22  trial is shorter here than in the Northern District of Illinois, the median time from filing to

23  disposition is about the same (8.5 months here, compared to 8.4 months there) and judges in this

24  district carry a greater caseload (854 pending cases per judgeship here, compared to 722 pending

25  cases per judgeship there). *See* U.S. Courts, 2019 Nat'l Judicial Caseload,

26  _____

27    [7] Google reserves the right to later seek dismissal of Molander's claims on other grounds,

28  including choice of law.

-14-

www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/12/31-1 (last visited June 18, 2020).

In short, the relevant factors strongly favor transferring this case to the Northern District of Illinois. The Supreme Court has long held that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent." *Cont'l Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26 (1960). This Court need not and should not tolerate such wastefulness because "in view of the overall fairness, convenience, and efficiency gains, . . . the benefits of transfer outweigh the disadvantages." *Papasan v. Dometic Corp.*, No. 16-CV-02117-HSG, 2018 WL 1367341, at *3 (N.D. Cal. Mar. 16, 2018).

Accordingly, if the Court does not dismiss this case or transfer it under the first-to-file rule, the Court should transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a).

**E.   At the Very Least, this Case Should Be Stayed**

If the Court is not inclined to dismiss or transfer, then it should, at a minimum, stay this case pending the outcome of the earlier-filed actions. Courts have ample authority to stay later-filed federal and state cases under the first-to-file rule. *See, e.g.*, *Kohn*, 787 F.3d at 1239 ("The first-to-file rule allows a district court to stay proceedings if a similar case with substantially similar issues and parties was previously filed in another district court."); *United Artists*, 147 F. Supp. 2d at 979 n.12. Staying this case would further principles of comity and conserve judicial and party resources. The Northern District of Illinois and the Seventh Circuit have collectively devoted more than four years to adjudicating the claims and defenses in the *Rivera* Federal Action—the same claims and defenses that this Court would be asked to decide should this action proceed. A stay would eliminate both the risk of inconsistent rulings and the burden of litigating duplicative actions, and would not unfairly prejudice Molander, who is a member of the putative class whose claims are currently being litigated by his counsel in the *Rivera* Federal Action.

# IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Lastly, if the Court declines to dismiss, transfer, or stay this case under the first-to-file rule, then it should dismiss Molander's Complaint under Rule 12(b)(6) because Molander has not alleged and cannot allege valid BIPA claims.

## A.   Legal Standard

A Rule 12(b)(6) motion tests the legal adequacy of a complaint. "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

## B.   BIPA Does Not Apply to Google Photos

BIPA does not regulate "biometrics" indiscriminately. Rather, BIPA regulates two distinct and carefully defined things: "biometric identifiers" and "biometric information." Accepting Molander's allegations as true, this case involves neither, and it should be dismissed.

The gist of Molander's Complaint is that Google obtained so-called "face templates" and other information from photos that he uploaded to Google Photos. *See* Compl. ¶¶ 5, 21-22. By its plain terms, however, BIPA does not apply to "*photographs*" or to "*information derived from [photographs]*." *See* 740 ILCS 14/10 (emphasis added). Thus, the photos of Molander that Google allegedly analyzed are not "biometric identifiers," and the information Google allegedly derived from those photos is not "biometric information." Molander therefore has not stated and cannot state a BIPA violation.

Molander seeks to evade that result by contending that information derived from photos (what Molander calls a "face template") can be a scan of face geometry, which in turn is a "biometric *identifier*[]." Compl. ¶¶ 21, 49. That convoluted interpretation cannot be squared with BIPA's text, structure, or history.

The text of the statute makes clear that the General Assembly intended the term "biometric identifier" to refer only to things obtained in person, from the biological source itself. BIPA defines "biometric identifier" to mean "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. These are all things derived from the "biologically unique" features of a person. *Id.* 14/5(c). One obtains a "retina . . . scan" by scanning a person's

-16-

"retina," a "fingerprint" by printing a person's "finger[]," and so on. *Id.* 14/10. None of these things can be obtained without an actual person present. The same is true of the things that BIPA expressly excludes from the definition of "biometric identifier"—"writing samples, written signatures, photographs, human biological samples," "X-ray[s]," "MRI[s]," and "PET scan[s]," to name a few. *Id.*

It follows that a "scan of . . . face geometry," read in context, refers only to a scan of the geometry of a person's actual face—that is, it must be derived directly from the subject, not from a photo of the subject. *See People v. Diggins*, 919 N.E.2d 327, 332 (Ill. 2009) (explaining that under the canon of *noscitur a sociis*, "the meaning of questionable words or phrases in a statute may be ascertained by reference to the meaning of words or phrases associated with it") (internal quotation marks and citation omitted). The alleged "face templates" at issue here do not fit that description: They are allegedly "scans" of *photos*, Compl. ¶ 21, not scans of the geometry of a person's actual face. The face templates thus do not qualify as "biometric identifiers."

The structure of the statute reinforces this conclusion. The General Assembly distinguished "biometric identifiers" from "biometric information" based on the *source* of the data in question. A "biometric identifier" is something derived from persons themselves. "Biometric information," by contrast, is one step removed: It is information "*based on* an individual's biometric identifier." 740 ILCS 14/10 (emphasis added). Under the statute, therefore, what is derived from a person is a "biometric identifier," and what is subsequently derived from a biometric identifier is "biometric information." The statute's structure thus confirms that a "scan of . . . face geometry" must be derived directly from the subject. Plaintiff's interpretation of the statute would collapse this careful structure.

Indeed, all of BIPA's requirements, including those at issue here, apply equally to both "biometric identifiers" and "biometric information." *See, e.g.*, 740 ILCS 14/15(b). Given that the two terms repeatedly appear side by side throughout the statute, it would make no sense for the General Assembly to *exclude* certain things specifically from one definition, only for those same things to fall within the other definition. Here, the General Assembly expressly excluded information derived from photos from the definition of "biometric *information*"; that exclusion

-17-

1    becomes superfluous if the very same information is included in the definition of "biometric

2    *identifier.*" *See Innovative Modular Sols. v. Hazel Crest Sch. Dist. 152.5*, 965 N.E.2d 414, 418

3    (Ill. 2012) ("We consider the statute in its entirety and must avoid a construction that renders any

4    part of it meaningless or superfluous.").

5         BIPA's consent provisions also make clear that the General Assembly did not intend

6    information derived from photos to be "biometric identifiers." Those provisions require that a

7    private entity obtain a subject's informed written consent before it obtains the subject's

8    "biometric identifier." 740 ILCS 14/15(b). When a scan is conducted in person, there is always an

9    opportunity to get a person's informed consent; the subject of the scan will be present to provide

10   (or withhold) it. But if "biometric identifier" also included information derived from photos, that

11   opportunity would, in many cases, not exist. Getting the requisite informed consent would be

12   practically impossible because one would have to contact every person in the photo—no matter

13   how long ago the photo was taken, and no matter whether the person in the photo was even

14   known. Because the General Assembly contemplated at least an opportunity for informed consent

15   when it enacted BIPA, the fact that such an opportunity would often not even exist under

16   Molander's reading of the statute demonstrates that his reading is wrong.

17        Google's reading is further confirmed by the legislative history. BIPA was motivated in

18   part by the bankruptcy of a company called Pay By Touch. *See* IL H.R. Tran. 2008 Reg. Sess. No.

19   276, at 249 (May 30, 2008) (Statement of Rep. Kathleen A. Ryg). The biometric identifiers that

20   Pay By Touch possessed were fingerprints obtained through in-person scans at grocery stores and

21   gas stations.  *See* 740 ILCS 14/5(b). It was the "growing" use of those kinds of "biometrics"—

22   that is, in-person scans "used to access finances or other sensitive information"—that motivated

23   the General Assembly to enact BIPA. *Id*. 14/5(a), (c). Further, there is no indication whatsoever

24   in the legislative record that the General Assembly ever intended to regulate information derived

25   from photos. That silence speaks volumes, because one must presume that if the General

26   Assembly actually intended to enact a law as sweeping as Molander suggests, someone would

27   have remarked upon it. *See Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991). Finally, the

28   General Assembly considered versions of the bill that would have covered "facial recognition"

1  explicitly, or "records"—rather than "scans"—of face geometry. SB 2400, § 10, S. Floor Amend.

2  No. 4, 95th Gen. Assemb., Reg. Sess. (Ill. Apr. 11, 2008); SB 2400, § 10, 95th Gen. Assemb.,

3  Reg. Sess. (Ill. Feb. 14, 2008). But it chose instead language targeting only the specific, in-person

4  scans that had prompted it to legislate in the first place. *See Laborer's Int'l Union of N. Am.,*

5  *Local 1280 v. State Labor Relations Bd.*, 507 N.E.2d 1200, 1204 (Ill. App. Ct. 1987) ("[T]he

6  intent of the state legislature can be derived not only from the language actually adopted, but also

7  from the language which was changed or not adopted.").

8      Google notes that other courts have resolved this issue of statutory interpretation

9  differently. *See In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal.

10  2016); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088 (N.D. Ill. 2017).[8] But that should not prevent

11  this Court from reaching the correct result. This Court is not bound by those decisions, *see Hart v.*

12  *Massanari*, 266 F.3d 1155, 1174 (9th Cir. 2001), and their reasoning is unpersuasive.

13      The court in *Facebook* adopted an interpretation of "photographs" that neither party

14  before it had advanced, construing the term to refer only to "paper prints of photographs, not

15  digitized images." *In re Facebook*, 185 F. Supp. 3d at 1171. That interpretation is contrary to the

16  ordinary meaning of the word "photographs," which in 2008 was understood (as it is now) to

17  mean *both* digital *and* paper photographs. *See* Oxford English Dictionary (online ed.) (defining

18  "photograph" to include "a picture made by focusing an image and then storing it digitally," and

19  citing an example of that usage from 1998). That interpretation is also unsupported by BIPA's

20  legislative history, which contains no indication at all that the General Assembly intended to give

21  such a common term such a restrictive meaning. And if embraced, the *Facebook* court's

22  interpretation of BIPA would lead to absurd results—among them that just *taking* a digital photo

23

24  _____

25      [8] The decision in *Norberg v. Shutterfly, Inc.*, 152 F. Supp. 3d 1103 (N.D. Ill. 2015),

26  contained virtually no analysis, and the unpublished decision in *Monroy v. Shutterfly, Inc.*, No. 16

27  C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017), largely adopted the district court's

28  reasoning in the *Rivera* Federal Action.

-19-

1   would constitute a "scan of . . . face geometry," because such a photo would no longer fall within

2   the exclusion for "photographs."

3        Before dismissing the *Rivera* Federal Action on summary judgment, Judge Chang rejected

4   the "paper prints" interpretation adopted by the *Facebook* court, but nonetheless held that

5   information derived from photos could fall within the definition of "biometric identifier." *Rivera*,

6   238 F. Supp. 3d at 1096 n.7. Judge Chang reasoned that Google's interpretation lacked "direct

7   textual support." *Id*. at 1096. But Google's reading is compelled by the canons of interpretation

8   and makes the most sense of the definition's place in the structure of the whole act, in addition to

9   the text itself. *See supra* at Section IV.B; *Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990)

10  ("[I]n ascertaining the meaning of a statute, the statute should be read as a whole with all relevant

11  parts considered . . . [and] should be construed so that no word or phrase is rendered superfluous

12  or meaningless.") (citations omitted).

13       Judge Chang disagreed with Google's structural argument: First, he found that there was

14  no "textual . . . clue" to support it. Because "[t]he definition of 'biometric identifier does *not* use

15  words like 'derived from a person,'" he reasoned, "there is no parallel structure to speak of." 238

16  F. Supp. 3d at 1096-97. But Google's structural argument does not depend on an *explicit* textual

17  basis in the definition of "biometric identifier." Rather, it depends on the distinction between the

18  definitions of biometric identifiers and biometric information that is apparent by juxtaposition:

19  An identifier is derived in person, while biometric information is derived from an identifier.

20  Second, Judge Chang deemed it improper to infer anything about the meaning of "biometric

21  identifier" from the items expressly excluded from the definition of that term. Because "the 'do

22  not include' listings defy a common thread," he stated, "it is not sensible to use the photograph

23  exclusion to back-fill an interpretation of biometric identifier." *Id*. at 1097. But the "common

24  thread" in the exclusions is that they *all* derive from an in-person interaction. Thus, the

25  exclusions—whether or not they are characterized as "true" or "just-to-be-sure exclusions"—

26  confirm that biometric identifiers must be derived directly from persons.

27       Finally, Judge Chang did not solve the key flaw in Molander's interpretation of the

28  statute: There is no reason the General Assembly would go through the trouble of excluding

-20-

1   information derived from photos from the definition of "biometric information" if that very thing

2   were swallowed up by the definition of "biometric identifier." Molander's reading would render

3   that exception superfluous.

4          In short, the text, structure, and purpose of BIPA all confirm that it does not cover

5   information derived from photos. Accordingly, Molander has not stated and cannot state a

6   violation of BIPA, and the Complaint should be dismissed with prejudice. *See Balistreri*, 901

7   F.2d at 699 (explaining that "[d]ismissal can be based on the lack of a cognizable legal theory").

8                                    **V.    CONCLUSION**

9          Allowing Molander to litigate his duplicative claims in this Court would reward forum-

10  shopping and invite all the negative consequences the first-to-file rule is meant to avoid. The

11  Court should reject AWCR's gamesmanship and dismiss this case under the first-to-file rule.

12  Alternatively, the Court should transfer the case under the first-to-file rule and Section 1404(a).

13  At a minimum, the Court should stay this case pending the outcome of the *Rivera* Federal Action.

14  Finally, if the Court denies Google's motion under the first-to-file rule, then it should nonetheless

15  dismiss Molander's Complaint for failure to state a claim under Rule 12(b)(6).

16  DATED: June 18, 2020                              **PERKINS COIE LLP**

17

18                                    By: */s/ Susan D. Fahringer*
                                           Susan D. Fahringer
19
                                      Susan D. Fahringer, CA Bar No. 162978
20                                    *SFahringer@perkinscoie.com*
                                      1201 Third Avenue, Suite 4900
21                                    Seattle, WA 98101
                                      Telephone: (206) 359-8000
22                                    Facsimile: (206) 359-9000

23                                    Sunita Bali, CA Bar No. 274108
                                      *SBali@perkinscoie.com*
24                                    505 Howard Street, Suite 1000
                                      San Francisco, CA 94105
25                                    Telephone: (415) 344-7000
                                      Facsimile: (415) 344-7050
26
                                      Attorneys for Google LLC
27

28